JUSTICE SOLOMON, concurring.
I join with the majority in reversing the trial court's decision to uphold the monetary grants to defendant religious institutions. I agree that under the facts of this case the distribution of the grant money to the religious institutions was contrary to the plain language of the Religious Aid Clause, N.J. Const. art. I, ¶ 3. I write *1014 separately to express my opinion that the Religious Aid Clause cannot categorically bar churches with active congregations from receiving funds that promote a substantial government purpose, such as historic preservation. Such a blanket exclusion violates the Free Exercise Clause of the United States Constitution **581 and the United States Supreme Court's opinion in Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. ----, 137 S.Ct. 2012, 198 L.Ed.2d 551 (2017).
Pursuant to the Supremacy Clause of the United States Constitution, "a provision of [a] State Constitution [cannot] remain in force if it conflicts with the Federal Constitution." Comm. to Recall Robert Menendez From the Office of U.S. Senator v. Wells, 204 N.J. 79, 105, 7 A.3d 720 (2010). Thus, a state constitutional provision that conflicts with the United States Constitution is preempted. See U.S. Const. art. VI, cl. 2.
The First Amendment to the United States Constitution provides in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "The Free Exercise Clause 'protect[s] religious observers [and religious entities] against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.' " Trinity Lutheran, 137 S.Ct. at 2019 (quoting Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533, 542, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (first alteration in original) ).
Therefore, while the majority, in discussing the plain language of the Religious Aid Clause, correctly notes that, "[t]he clause does not ask about the governing body's intent," ante at 565, 181 A.3d at 1005, and concludes that "there is no exception for historic preservation," ante at 566, 181 A.3d at 1005, application of the limiting provisions of the Religious Aid Clause is restricted by the Free Exercise Clause of the United States Constitution, see U.S. Const. art. VI, cl. 2.
I.
In Trinity Lutheran, the United States Supreme Court determined that a categorical ban "disqualifying churches and other religious organizations from receiving grants under [a state/governmental] playground resurfacing program" violated the Free **582 Exercise Clause. 137 S.Ct. at 2017. Accordingly, a "generally available benefit" cannot be denied to an organization based solely on its religious identity.[1] Id. at 2019 ; see also McDaniel v. Paty, 435 U.S. 618, 629, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (striking down statute which disqualified ministers from serving as state legislators). "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *1015 Lukumi, 508 U.S. at 532, 113 S.Ct. 2217. It is in this context that the United States Supreme Court examined the words and purpose of local ordinances in Lukumi. See ibid.; see also Locke v. Davey, 540 U.S. 712, 715-16, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004).
Lukumi, though not directly applicable to the case at hand, is instructive. That case concerned local ordinances prohibiting animal sacrifices. 508 U.S. at 526, 113 S.Ct. 2217. The Court noted that "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral and ... is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." Id. at 533, 113 S.Ct. 2217 (citation omitted). Application of that principle requires examining the purpose of the law, which in turn requires scrutinizing its text to determine whether it is neutral on its face-but the text is not determinative. Id. at 533-34, 113 S.Ct. 2217. "Masked"
**583 "governmental hostility" is also invalid, and examination of a statute's underlying purpose is appropriate. Id. at 534, 113 S.Ct. 2217. In examining the challenged law, the Court found that the ordinances were "consistent with the claim of facial discrimination" and, more importantly, that they were passed to "suppress[ ] ... the central element of [a religion]." Ibid. Thus, the purpose underlying passage of the ordinances was impermissible. Id. at 534-35, 113 S.Ct. 2217.
More recently, in Locke, 540 U.S. at 715, 124 S.Ct. 1307, the Supreme Court balanced the limitations of the Free Exercise Clause against Washington State's "antiestablishment interest" as expressed in its state constitution. In that case, Joshua Davey, a student pursuing a double major in pastoral ministries and business management/administration at a private, Christian college received a scholarship from a state-run scholarship program that prohibited the disbursement of funds to a qualified student pursuing a degree in devotional theology. Id. at 716-17, 124 S.Ct. 1307. The Court found that the program did not violate the Free Exercise Clause, noting that the state's "antiestablishment interest"-its interest in not supporting the ministry or "funding the pursuit of [a] devotional degree[ ]"-"is scarcely novel."[2] Id. at 722-23, 725, 124 S.Ct. 1307. In distinguishing the ordinances at issue in Lukumi from the program in Locke, the Court explained that the program "goes a long way toward including religion in its benefits" because scholarship recipients may "attend pervasively religious schools" and "are still eligible to take devotional courses." Id. at 724-25, 124 S.Ct. 1307. The Court concluded that "neither ... the history or text of Article I, § 11 of the Washington Constitution, nor ... the operation of the [scholarship program] ... suggests animus towards religion." Id. at 725, 124 S.Ct. 1307. Finally, the Court noted that the "historic and substantial state interest at issue" also weighed against finding that the program **584 was unconstitutional. Ibid. [3] Importantly, the only state interest considered by the United States Supreme Court in Locke was Washington State's "antiestablishment interest" which was balanced against the boundaries of the Free Exercise Clause. Id. at 720-22, 124 S.Ct. 1307.
Most recently, in Trinity Lutheran, the Court considered the Trinity Lutheran Church Child Learning Center's application for a state grant administered by the *1016 Missouri Department of Natural Resources (the Department) to reimburse qualifying nonprofit organizations that install playground surfaces made from recycled tires. 137 S.Ct. at 2017. "[T]he Department had a strict and express policy of denying grants to any applicant owned or controlled by a church, sect, or other religious entity." Ibid. The State rejected the application citing Article I, Section 7 of the Missouri Constitution, which states: "[N]o money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion ...." Ibid. (quoting Mo. Const. art. I, § 7 ). In concluding that the Department's denial of the application violated the Free Exercise Clause, the Court noted, "only a state interest 'of the highest order' can justify the Department's discriminatory policy." 137 S.Ct. at 2024 (quoting McDaniel, 435 U.S. at 628, 98 S.Ct. 1322 ). The Court found that the purported interest-the "policy preference for skating as far as possible from establishment concerns"-was unavailing because the doctrine of separation between Church and State "is limited by the Free Exercise Clause." Ibid. (quoting Widmar v. Vincent, 454 U.S. 263, 276, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) ). Thus, the Court found that the State's pursuit of its antiestablishment policy went "too far" in "denying a qualified religious entity a public benefit solely because of its religious character." Ibid. **585 II.
Consistent with the precedent established in Lukumi and Locke and reaffirmed in Trinity Lutheran, a state's antiestablishment interest is not without its limits. Thus, I believe that the Free Exercise Clause requires an examination of the enabling legislation and underlying motive or purpose of state action aimed at benefiting a house of worship.[4] See Trinity Lutheran, 137 S.Ct. at 2024.
New Jersey's Constitution recognizes the preservation of historic structures as an important government purpose by "providing funding, including loans or grants ... for historic preservation." N.J. Const. art. VIII, § II, ¶ 7. Pursuant to that important government purpose and N.J.S.A. 40:12-15.2,[5] "[t]he Morris County Board of Chosen Freeholders created the Morris County Historic Preservation Trust Fund ... to help support the preservation of the county's exceptional abundance of historic resources." Morris County Office of Planning & Preservation, Historic Preservation (2018), https://planning. morriscountynj.gov/divisions/prestrust/historic/. The expressed purpose of Morris County's program is to advance New Jersey's substantial interest in historic preservation.
*1017 **586 New Jersey's substantial interest in historic preservation as expressed in our Constitution distinguishes this case from Locke. In Locke, the Court found that the state's decision not to fund devotional degrees was constitutional given the state's antiestablishment interest. 540 U.S. at 722-23, 725, 124 S.Ct. 1307. However, the Court made clear in Trinity Lutheran that a state's reliance on antiestablishment principles, even those grounded in the state's constitution, is not without limits. 137 S.Ct. at 2024. Thus, an antiestablishment interest cannot justify the categorical ban of a religious institution from a public benefit based solely on its religious character. Ibid. Here, New Jersey's interest in historic preservation, N.J. Const. art. VIII, § II, ¶ 7, counters its antiestablishment interest expressed in the Religious Aid Clause. I believe, therefore, that New Jersey's antiestablishment interest is less compelling than was the state's interest in Locke.
The majority concludes that the present case exceeds the scope of Trinity Lutheran since Morris County's taxpayer-funded grants "went toward 'religious uses.' " Ante at 573, 181 A.3d at 1009. In reaching this conclusion, the majority refers for support to Footnote 3 of the Trinity Lutheran decision, 137 S.Ct. at 2024 n.3. However, that conclusion ignores New Jersey's separate and substantial government interest at stake in this case-historical preservation. I believe that had Morris County's program been applied in a fundamentally neutral manner, the Religious Aid Clause could not bar funding to an otherwise qualified religious institution.
Nevertheless, I am constrained to concur with the majority because as the majority points out: there will be a protracted relationship between Morris County and defendant religious institutions; 41.7 percent of the grant money was awarded to twelve churches which, in some instances, sought funding to continue religious services; and the program's Rules and Regulations explicitly name religious institutions as eligible applicants. Therefore, the grant program at issue here is neither facially neutral nor neutral in its application.

However, not all government action that intersects with a citizen's religious beliefs is contrary to the Free Exercise Clause. Government action that does not "coerce individuals into acting contrary to their religious beliefs" does not run afoul of the Free Exercise Clause. Lyng v. Nw. Indian Cemetery Protective Assoc., 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (finding that decision to harvest timber for construction on tract of land with religious significance to Native American tribe was not prohibited by Free Exercise Clause). Additionally, generally applicable laws passed without regard to religion do not offend the tenets of the Free Exercise Clause. Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (rejecting Free Exercise claim and finding that members of religious organization were not entitled to dispensation from criminal law which prohibited use of peyote).

In noting the commonality of this interest, the Court references other similar state constitutional provisions, including Article XVIII of the New Jersey Constitution of 1776. Locke, 540 U.S. at 723, 124 S.Ct. 1307.

I note that Justice Scalia's dissent in Locke illustrates a discord in the test's application, asserting that the program "facially discriminates against religion." 540 U.S. at 726, 124 S.Ct. 1307 (Scalia, J., dissenting).

In Caplan v. Town of Acton, 479 Mass. 69, 92 N.E.3d 691, 693-94 (2018), the Supreme Judicial Court of Massachusetts analyzed the disbursement of grant funds to an active church, which was characterized as a "historic resource." In assessing the constitutionality of the grant under the State's anti-aid amendment, the court applied a three-factor test: (1) is "a motivating purpose of each grant ... to aid the church"; (2) "whether the grant will have the effect of substantially aiding the church"; and (3) "whether the grant avoids the risks of the political and economic abuses that prompted the passage of the anti-aid amendment." Id. at 694. Although the Massachusetts Court distinguished its case from Trinity Lutheran, as the anti-aid amendment did not impose a categorical ban on the grant of funds to a religious institution, and applied its own test to determine the validity of the grants, see id. at 704-05, I find its analysis informative.

N.J.S.A. 40:12-15.2(a)(1)(e) allows the submission of a referendum to county voters to authorize the "imposition of an annual levy" for "historic preservation of historic properties, structures, facilities, sites, areas, or objects."